United States District Court
Southern District of Texas
**ENTERED**

January 28, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BROD, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:20-cv-1854 |
| | § | |
| SPRINT CORP. & SPRINT/UNITED | § | |
| MANAGEMENT CO., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff's case alleging age discrimination in employment is before the Court on Defendant's Motion for Summary Judgment.[1]  ECF 24.  Having considered the parties' submissions and the law, the Court recommends that Defendant's motion be GRANTED and Plaintiff's claims be DISMISSED with prejudice.

### I.      Background

The facts set forth here are undisputed unless otherwise noted.  Plaintiff was employed by Defendant Sprint as a District Manager in Houston, Texas from February 2015 until November 2, 2018.  ECF 27-3 at 14, 26.  From April 2018 until his resignation, Brod's direct supervisor was Rick Urias, Director of Retail Sales for the Houston market. *Id.* at 31.  Urias reported to John Stevens, who in August 2018 was President, South Region.

---

[1] The District Court referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 22.

ECF 24-5 at 21; ECF 27-19 at 3.

In July 2018, Urias sent emails to all District Managers who reported to him addressing their performance and areas where improvement was needed. Urias's July 5, 2018 email to Brod highlighted sales deficiencies ("Accessories Per Handset" (APH) and "Total Equipment Protection" (TEP)) and outlined steps he expected Brod to take to improve performance at his stores. ECF 24-12. Brod contends that after the July email Uria did not offer any coaching or assistance to help Brod remedy the deficiencies and instead Urias conducted store inspections and staff audits without Brod's input. ECF 27-5 at ¶ 11.

On August 14, 2018 Urias issued to Brod an Action Plan for Improvement (August Action Plan). That evening, Urias telephoned Brod and told him he had been placed on "a FINAL WRITTEN corrective action" (as part of the August Action Plan) under Sprint's Corrective Action Policy. ECF 27-11 at 2; ECF 24-13. Brod contends that the August Action Plan contains "mischaracterizations, inconsequential facts, and outright falsehoods." ECF 27-5 at ¶ 13.

Very late that same night, John Stevens sent an email to Sprint employees with the subject "Important - Reprogramming action needed." ECF 27-19. Stevens's email included the following statements: "Years of experience don't always translate into best practices," and "Today's problems demand new skills and many of our partners haven't fully developed these new skills even though we have great tenure in our management ranks." *Id.* Brod believed Stevens's statements were "unmistakably ageist," clearly intended to refer solely to older employees like him, and a "veiled indication that you can't

2

teach an old dog new tricks."  ECF 27-5 at ¶ 14; ECF 27-11 at 5.   More specifically, Brod

"understood that Sprint's warning [in the August Action Plan], in conjunction with Sprint's

ageist emails, and favoritism towards younger employees, demonstrated an illegal intention

to target [him]."  ECF 27-5 at ¶ 15.

After receiving the August 14, 2018 Action Plan, Brod complained to Sprint's Ethics

Helpline and submitted an ADR Form pursuant to Sprint's Open-Door/ADR process.  ECF

24-6 ¶¶ 9-10; 27-11.  In his August 15, 2018 email addressing the "Ethics team," Brod

reported concerns around coaching and disciplinary action, as well as a complaint of age

discrimination, stating

> lately there have been incidents that demonstrate that I am targeted for
> termination.   While on the surface these actions appear to be regarding
> performance, it is clear to me that performance is not the motivation.  I am
> forced to conclude that this is more a matter of age discrimination.

ECF 27-11 at 2.  Brod repeated the remarks in Stevens' email he believes are veiled

discriminatory references to his age and listed other allegedly discriminatory statements by

Stevens ("RadioShack people are 'older generation'") that he contends, when viewed in

conjunction with the final written warning in the August Action Plan are "a clear indication

of age discrimination."  ECF 27-11 at 5.  On the ADR Form Brod submitted he stated: "I

have been unfairly targeted under the guise of poor performance. There is no basis for

taking me from zero corrective action directly to a written final."  ECF 24-14 at 25.

Human Resources Business Partner Steve Cox initially investigated Brod's Ethics

Helpline complaint.  ECF 24-6 ¶ 11.  Cox interviewed Brod, Stevens, McCarter (Brod's

former supervisor), and Urias.  Id. ¶¶ 12-24.  Brod told Cox that younger district managers

were given more attention; that other employees told Brod that Stevens intended to fire him; that Brod confronted Stevens in March 2018 about his belief that Stevens intended to fire him; and that Stevens's comments in the email are veiled references to Brod's age. ECF 24-14 at 4.  Ultimately, Cox determined that Brod's allegation of age discrimination could not be substantiated.  ECF 24-6 ¶ 25.

Following Cox's investigation, the ADR process continued.  Human Resource Business Partner Candace Lyle was assigned to lead an Independent Management Review (IMR) of Brod's challenge to the August Action Plan.  *Id.* ¶ 31; ECF 27-29.  During the IMR process, Stevens agreed to reduce the corrective action level in the August Action Plan from "final written warning" to "written warning."  ECF 24-6 ¶ 29; ECF 27-29.

On October 9, 2018, Urias issued Brod another Action Plan for Improvement (October Action Plan).  ECF 24-16.  The October Action Plan noted that although the August Action Plan had been reduced to a written warning, Brod's September performance and the "consistent underperformance of this district," warranted a final written warning. *Id.* On October 17, 2018, Lyle reported the IMR's decision to uphold the corrective actions, including the October Action Plan which contained a final written warning.  ECF 24-17.

Meanwhile, after he received the August Action Plan, Brod had begun looking for a new job.  ECF 27-3 at 53.  Brod interviewed for a position with Mobilelink in mid-September and received an offer of employment over the phone in late September, prior to issuance of the October 9, 2018 Action Plan.  *Id.* at 54.  Brod resigned from Sprint on October 19, 2018, 10 days after receiving the final written warning in the October Action Plan, and began working at Mobilelink shortly thereafter.  ECF 24-6 ¶ 32; ECF 27-3 at 11.

Brod contends that he had no choice but to resign from Sprint because the stress of the situation was unrelenting and took an extreme emotional toll on him.  ECF 27-5 ¶ 18.

Brod filed a charge of age discrimination with the EEOC on February 8, 2019 and initiated this case in May 2020.  ECF 1.  Brod's First Amended Complaint asserts claims against Sprint for age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.* (ADEA) and its state law counterpart, Chapter 21 of the Texas Labor Code (TCHRA).  ECF 4 ¶¶ 18-31.  Sprint now moves for summary judgment on all of Brod's claims.[2]

## II.    Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party.  *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).  "An issue is material if its resolution could affect the outcome of the action."  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).  If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial."

---

[2] Brod's Summary Judgment Response mentions a hostile work environment (ECF 27 ¶ 1), but Brod did not plead a hostile work environment claim (*see* ECF 4) and does not make any argument regarding such a claim in his Response. *See* ECF 27.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

When ruling on a motion for summary judgment the court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). The Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclu[sory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

The Supreme Court in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000), summarized the appropriate inquiry when reviewing an employer's motion for summary judgment in discrimination cases:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

As in all cases, the Court must draw all reasonable inferences in favor of the non-movant and disregard all evidence that is favorable to the moving party and the jury is not required to believe. *Id*. at 150-51. Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id*. at 148.

III.    Analysis

A.      **Sprint is entitled to summary judgment on Brod's age discrimination claims.**

1.      **Elements of an age discrimination claim under the ADEA and TCHRA.**

The ADEA prohibits discharging or otherwise discriminating against an employee who is "at least 40 years of age" because of the employee's age.  29 U.S.C. §§ 623(a)(1), 631.  The TCHRA is a parallel state statute that also prohibits age discrimination. TEX. LABOR CODE § 21.051; *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) ("The ADEA and the TCHRA prohibit employers from discharging or otherwise discriminating against any individual because of his or her age."); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex.2012).  When a plaintiff relies on circumstantial evidence, as Brod does here, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to ADEA and TCHRA claims.  *Id.*

A prima facie case of age discrimination requires a plaintiff to demonstrate that he: 1) suffered an adverse employment action; 2) was qualified for the position; 3) was within the protected class when the adverse action occurred; and 4) was replaced by someone younger or outside the protected class, treated less favorably than a similarly situated younger employee, or otherwise discharged because of his age.  *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

If the plaintiff makes a prima facie case, "the burden shifts to the employer to provide

a legitimate, non-discriminatory reason for the employment decision." *Moss*, 610 F.3d at 922.   If the employer meets its burden, the plaintiff must then show that the employer's reason is merely pretextual.   *Id.*   It is only at this final "pretext" stage that the ADEA and Texas law provide different standards.   *See Goudeau*, 793 F.3d at 475.   An ADEA plaintiff must show that age discrimination was the "but-for" cause of his adverse employment action, while a TCHRA plaintiff need only show that age was a "motivating factor" in the adverse employment action. *Id.*; *Oldenburg v. Univ. of Texas at Austin*, 860 F. App'x 922, 924 (5th Cir. 2021).

Because the elements of a prima facie case are the same under the ADEA and TCHRA, and Brod cannot meet his prima facie burden, the Court need not consider the issue of pretext, the only stage at which the standards for demonstrating a claim under the ADEA and the TCHRA differ.   Therefore, the Court need not conduct a separate analysis of Chapter 21 of the Texas Labor Code.   *Maestas v. Apple, Inc.*, 546 F. App'x 422, 425 n.1 (5th Cir. 2013).

### 2.   Brod has failed to meet his burden to demonstrate the elements of a prima facie case of age discrimination.

Sprint makes no challenge to Brod's ability to demonstrate two of the four elements of a prima facie case of age discrimination under the ADEA and the TCHRA.   First, Sprint does not dispute that at 50 years of age, Brod was a member of a protected class.   Second, Sprint makes no argument that Brod was not qualified for the position of District Manager.

In support of its motion for summary judgment, Sprint argues that Brod cannot meet his burden to show two other elements of a prima facie case of age discrimination: (1) that he suffered an adverse employment action, and (2) that he was treated less favorably than a

similarly situated younger employee or otherwise discharged because of his age. Alternatively, Sprint argues that even if Brod could meet his prima facie burden, Sprint has demonstrated a legitimate, non-discriminatory reason for its employment decisions and Brod has failed to present any evidence of pretext.  Because the Court agrees that Brod cannot demonstrate a prima facie case of age discrimination, it need not address Sprint's alternative arguments.

### a. Brod has failed to meet his burden to show that Sprint's corrective action measures constitute adverse employment actions.

Brod argues that the August Action Plan, the October Action Plan, and the lack of mentoring and coaching he suffered, are adverse employment actions.  In the Fifth Circuit, an adverse employment action must be an "ultimate employment decision," such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir.2007). As a corollary, actions by an employer that do not negatively impact job duties, compensation, or benefits do not constitute adverse employment actions for purposes of a discrimination claim.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (adverse employment action impacts job duties, compensation, or benefits).  Anti-discrimination statutes like the ADEA do not provide a remedy for "every decision made by employers that arguably might have some tangential effect upon…ultimate [employment] decisions." *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (employer's decision that limits an employee's opportunities for promotion or lateral transfer does not qualify as an adverse employment action for purposes of Title VII).

The Fifth Circuit has issued a multitude of decisions reiterating its strict interpretation

of the phrase "adverse employment action" in the context of discrimination claims.  *See, e.g., Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*, 731 F. App'x 288, 292 (5th Cir. 2018) (written reprimand and warning that future incidents would result in more severe action did not constitute an ultimate employment decision): *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (a poor performance review "standing alone, plainly does not meet the ultimate-employment-decision test."); *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions").  District Courts follow the Fifth Circuit's lead in strictly interpreting the phrase "adverse employment action."  *See. e.g., Gaspari v. FMC Techs., Inc*., No. CV H-13-2353, 2016 WL 1055642, at *8 (S.D. Tex. Feb. 4, 2016) (criticisms of job performance, poor performance reviews, a failure to train, support or assist, without evidence that the conduct altered an employee's compensation, benefits or duties, do not constitute adverse employment actions for purposes of a prima facie case of disparate treatment discrimination.), report and recommendation adopted, No. 4:13-CV-02353, 2016 WL 1070859 (S.D. Tex. Mar. 15, 2016); *Pollak v. Lew*, Civil Action No. H-11-2550, 2013 WL 1194848, *6 (S.D. Tex. Mar. 22, 2013) (denial of training is not an actionable adverse employment action), *aff'd* 542 F. App'x 304 (5th Cir. 2013).

  *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824–25 (5th Cir. 2019) illustrates this point.  Welsh, a teacher, alleged that being placed on a "Teacher in Need of Assistance Plan" (TINA), her principal's refusal to write her a recommendation letter, and an associate principal's humiliating comment directed at her constituted actionable adverse employment

actions. The Fifth Circuit upheld the district court's ruling and held that because the TINA was an effort to improve Welsh's job performance, did not result in a material loss of job responsibilities, was not a demotion, and did not impact her title, hours, salary, and benefits, Welsh had not suffered an adverse employment action. *Id.* Likewise, the Fifth Circuit rejected Welsh's argument that the TINA hindered her opportunity for promotion, and therefore constituted an adverse employment action. The Court rejected the argument because, among other reasons, Welsh could not identify a tangible job application that had been negatively impacted by the TINA. *Id.* at 25. The Court also rejected Welsh's contention that humiliating comments were adverse employment actions, finding the claim reflected merely an unpleasant workplace experience, not an adverse employment action. *Id.* at 26.

None of Brod's alleged adverse employment actions—the lack of training and mentoring and the August and October Action Plans—impacted Brod's duties, compensation, or benefits. Brod has presented no evidence demonstrating that a final written warning always or usually results in termination. Brod has presented no evidence showing the October Action Plan and the final written warning caused other serious consequences. Even before the October Action Plan and its final written warning were issued, Brod had interviewed for and received a job offer. He resigned from Sprint ten days after receiving the October Action Plan and then began working at his new job. Brod has failed to show any effect on his compensation, job duties, or benefits in the intervening period between the October Action Plan and his resignation ten days later. Because none of the conduct Brod complains of affected his compensation, job duties, promotions, or benefits, Brod cannot satisfy the required element of an adverse employment action.

**b. Brod has failed to meet his burden to show an adverse employment action based on a constructive discharge.**

Brod argues that he suffered an "ultimate employment decision" because a constructive discharge forced him to resign.  To prove a constructive discharge, Brod must show that his working conditions were so intolerable that a reasonable employee would have been compelled to resign.  *Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 677 (5th Cir. 2021).  To determine whether Brod's working conditions were sufficiently intolerable, the Court considers whether the Brod suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* (citing *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007)).  Construction discharge based on harassment "requires a greater degree of harassment than that required by a hostile work environment claim."  *Id.* (citing *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).  Absent aggravating factors, discrimination alone cannot support a claim for constructive discharge.  *Brown*, 237 F.3d at 566.  The standard is an objective one based whether a "reasonable employee" would be compelled to resign. *Hinojosa v. CCA Prop. Of Am., LLC*, 400 F. App'x 920, 922 (5th Cir. 2010).  The fact that a plaintiff felt compelled to resign is not sufficient to state a constructive discharge claim.  *Id*.

Brod has not presented any evidence demonstrating he suffered any of the seven factors the Fifth Circuit identified in *Newbury* as supporting a constructive discharge.  Brod

alleges the following "harassment" by Sprint:

- he was "badgered, harassed, and humiliated through the ageist emails and comments" Mr. Stevens made;

- Mr. Urias repeatedly attempted to find fault with his performance; and

- Mr. Urias put him on "immediate final notices based purely on one-off events and dubious reasoning."

ECF 27 at 25.  The Court views the evidence in the light most favorable to Brod and assumes he was treated unfairly and feared losing his job, but "[g]enerally negative work reviews and even disciplinary actions are not sufficient to support constructive termination."  *Brown v. Liberty Mut. Grp. Inc.*, No. 3:12-CV-1196-N, 2014 WL 11309761, at *3 (N.D. Tex. Jan. 21, 2014) (citing cases).  Brod's complaints of harassment and discrimination are no worse than other conduct the Fifth Circuit has held insufficient to support a claim of constructive discharge.  *See Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 350-51 (5th Cir. 2010) (complaints about lack of raises and overtime were insufficient to demonstrate constructive discharge); *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 652 (5th Cir. 2004) (being singled out and embarrassed is not the type of "badgering, harassment, or humiliation" required for constructive discharge); *Brown v. Bunge Corp.*, 207 F.3d 776, 782-83 (5th Cir. 2000) (demotion and decreased responsibilities absent other aggravating factors could not support constructive discharge).  In *Shryer v. Univ. of Texas Sw. Med. Ctr. at Dallas*, 587 F. App'x 151, 157 (5th Cir. 2014), the plaintiff presented evidence that her supervisor gave her poor performance reviews, sighed and occasionally commented on her disability, asked if she had a medical condition, and expressed frustration to a superior that she not adequately carrying out her responsibilities.  *Id.*  The Fifth Circuit held that even

13

though Shyer feared losing her job, her complaints did not support constructive discharge because "[t]ension between an employer and employee is not enough, standing alone, to constitute a constructive discharge." *Id.*

Finally, Brod started looking for a new job just a few days after receiving the August Action Plan, and before he received the October Action Plan, but he "didn't resign from Sprint until [he] felt [he] had an opportunity of somewhere to go." ECF 27-3 at 53-54. The fact that Brod continued to work at Sprint until he had secured a new job demonstrates that his working conditions were not so intolerable that he felt compelled to resign. Although the test for constructive discharge is an objective one, Brod's own testimony that he waited to resign from Sprint indicates that, at least in his own opinion, his work conditions were not so intolerable that he was compelled to resign even absent or before he had secured a new job.

In sum, Sprint is entitled to summary judgment on Brod's ADEA and TCHRA discrimination claims because Brod has not met his prima facie burden to show he suffered an adverse employment action.

**B.      Sprint is entitled to summary judgment on Brod's retaliation claims.**

**1.      Elements of a retaliation claim under the ADEA and TCHRA.**

"To state a prima facie retaliation claim under the ADEA, a plaintiff must show: (1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action." *Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861, 869 (5th Cir. 2016). As with discrimination, TCHRA provides a parallel retaliation claim. TEX. LABOR CODE § 21.055; *Univ. of Texas at Dallas v. Addante*, No. 05-20-00376-CV, 2021 WL

Case 4:20-cv-01854   Document 41   Filed on 01/28/22 in TXSD   Page 15 of 18

4772931, at \*10 (Tex. App.—Dallas, Sept. 8, 2021) (applying the *McDonnell Douglas* framework and the elements of a prima facie retaliation case to plaintiff's TCHRA retaliation claim). A plaintiff engages in protected activity when he opposes any practices forbidden by the ADEA. *Heggemeier*, 826 F.3d at 869. The plaintiff does not need to prove the opposed activity actually was unlawful but must establish tht he had a reasonable belief that the employer was engaged in unlawful employment practices. *Id.*

The definition of an adverse employment action in the retaliation context is broader than the definition used in the discrimination context. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) (noting that adverse employment actions for retaliation claims are not limited to the workplace, and the standard is less demanding than an ultimate employment decision). An adverse employment action in the retaliation context is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 945 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008) (a retaliation claim may rest on an action that a reasonable employee would find materially adverse). Whether an action meets this standard and will often depend upon the particular circumstances in an employee's case. *Burlington*, 548 U.S. at 69.

Under both the ADEA and the TCHRA, a plaintiff that meets his prima facie burden must prove by a preponderance of the evidence that the adverse employment action would not have occurred "but-for" the protected activity. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1123 (5th Cir. 1998); *Kopszywa v. Home Depot USA, Inc*., 620 F. App'x 275, 280

(5th Cir. 2015) (to avoid summary judgment on a retaliation claim, the plaintiff must show "a conflict in substantial evidence on the question of whether the employer would not have taken the challenged adverse employment action 'but for' the protected activity."); *Univ. of Texas at Dallas v. Addante*, No. 05-20-00376-CV, 2021 WL 4772931, at *15 (Tex. App. Sept. 8, 2021) (citing *Apache Corporation v. Davis*, No. 19-0410, 2021 WL 2603824, at *9 (Tex. June 25, 2021) (holding the "but-for causation standard applies in cases alleging retaliation for opposing discriminatory practices under Section 21.055. Federal caselaw, which our jurisprudence parallels, agrees.")).

### 2. Brod cannot meet his burden to show a causal connection between protected activity and his final written warning.

Brod first engaged in protected activity on August 14, 2018, after he received the August 14, 2018 Action Plan.  Therefore, only adverse employment actions that occurred after August 14, 2018 can support Brod's retaliation claim.  Issuance of the October 9, 2018 Action Plan is the only potentially actionable adverse employment action for purposes of Brod's ADEA retaliation claim.

In some cases, evidence of a written warning from an employer may meet a plaintiff's prima facie burden to establish an adverse employment action for purposes of a retaliation claim.  *See Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 586 (S.D. Tex. 2015) ("[d]isciplinary write-ups that are the basis for more serious consequences may be adverse employment actions.").  As the Court explained above in connection with Brod's discrimination claim, the October Action Plan could not have resulted in more serious consequences because Brod resigned shortly after it was issued.  Nonetheless, even

assuming the October Action Plan constitutes an adverse employment action for purposes of a retaliation claim, Brod still cannot meet his burden to show the required causal connection between his protected activity — filing the Ethics Helpline/ADR complaint — and the October Action Plan.

The evidence indicates that Stevens and Urias had been dissatisfied with Brod's performance for months before Brod made his Ethics Helpline/ADR complaint. For instance, Stevens testified that his first interaction with Brod was to inform him that his labor budget was "way out of bounds." ECF 24-3 at 6. Stevens had discussions with Brod's prior supervisor, Dawn McCarter, in 2017 about the underperformance of stores in the Houston region. *Id.* at 7-8. McCarter shared Stevens's concerns with Brod and informed Brod that he needed to improve. ECF 24-4 at 12. Urias warned Brod about his performance deficiencies in his July 5, 2018 email and the August 14, 2018 written warning. ECF 24-12, 24-13.

The only evidence Brod has presented to link the October 9, 2018 Action Plan to his Ethics Helpline/ADR complaint is the timing of the October Action Plan. The issuance of the October Action Plan a little more than two months after Brod's protected activity fails to raise an inference of retaliation in this case. The October Action Plan was not unprecedented but rather was the culmination of on-going dissatisfaction with Brod's performance that began months before the protected activity. *See Finch v. Texas Health & Human Serv. Comm'n*, No. H-13-3716, 2015 WL 5674834, at * 6 (S.D. Tex. Sept. 25, 2015) ("[w]here timing is the only basis for a claim of retaliation, and gradual adverse job action began well before the plaintiff had ever engaged in any protected activity an

inference of retaliation does not arise.").

Even if the timing of the October Action Plan were sufficient to satisfy the causal link element of Brod's prima facie case, Sprint has presented evidence that Urias issued the October Action Plan in response to Brod's "consistent underperformance." ECF 24-16 at 3. Given that Brod had notice by July 5, 2018 at the latest that Urias believed Brod needed to improve his performance, Brod cannot meet his ultimate burden on summary judgment to show "a conflict in substantial evidence" as to whether Urias would not have issued the October Action Plan but for Brod's complaint of age discrimination. *Kopszywa*, 620 F. App'x at 280.

## IV. Conclusion and Recommendation

For the reasons set forth above, the Court RECOMMENDS that Defendant Sprint's Motion for Summary Judgment (ECF 24) be GRANTED and Plaintiff's claims be dismissed with prejudice.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on January 28, 2022, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

18